**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

STEVE ENCINIAS,

        Plaintiff,

v.                                  No. 1:12-CV-1287 CG

CAROLYN W. COLVYN, Acting
Commissioner of the Social Security
Administration,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* and *Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* (together the "Motion"), filed on August 9, 2013, (Doc. 18; Doc. 19); *Defendant's Response to Plaintiff's Motion to Reverse or Remand* ("Response"), filed on October 28, 2013, (Doc. 22); and Plaintiff's *Reply Memorandum in Support of Motion to Reverse or Remand Administrative Agency Decision* ("Reply"), filed on November 14, 2013, (Doc. 23).

On August 13, 2009, Steve Encinias filed an application for disability insurance benefits alleging disability beginning March 1, 2008. (Administrative Record ("AR") at 114). His application was denied on December 30, 2009, (AR at 62), and also upon reconsideration on June 10, 2010, (AR at 72). Mr. Encinias filed his request for a hearing on August 4, 2010, (AR at 75); the hearing occurred on June 8, 2011 before Administrative Law Judge ("ALJ") Ann Farris. (AR at 35–58). Mr. Encinias and Judith Beard, an impartial vocational expert, testified at the hearing. (AR at 35–58).

Mr. Encinias subsequently filed a letter with the ALJ to request a "closed period" of disability from March 1, 2008 through August 2010, explaing that he had been working since August 11, 2010. (AR at 264). Mr. Encinias requested that he be awarded disability benefits for the time period of March 1, 2008 through May 11, 2011, which includes the trial work period pursuant to 29 C.F.R. § 404.1592. (AR at 264).

The ALJ issued her opinion on August 19, 2011, finding that Mr. Encinias was not disabled during the closed period. (AR at 31). Mr. Encinias filed an application for review by the Appeals Council, which was summarily denied, (AR at 1–3), making the decision of ALJ Farris the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Mr. Encinias complains that ALJ Farris committed reversible, legal error by failing to apply the correct legal standards when she: (i) evaluated the medical opinion of Mr. Encinias's treating physician, and (ii) analyzed Mr. Encinias's ability to do his past relevant work. (Doc. 19 at 1).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the Administrative Law Judge committed legal error when she discounted the medical opinion of Mr. Encinias's treating physician, pursuant to 42 U.S.C. § 405(g) (sentence four), the Court orders that the Motion be **GRANTED** and the case be **REMANDED** for further proceedings.

## I. Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal

standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007)

(citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II. Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits (DIB) and supplemental security income (SSI), a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process has been established for evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (i) he is not engaged in "substantial gainful activity;" that (ii) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (iii) his impairment(s) either meet or equal one of the "Listings"[1] of presumptively disabling impairments; or (iv) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261.

The fourth step is further broken down into three phases known as the "Winfrey analysis." *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). At phase one the ALJ must evaluate a claimant's physical and mental residual functional capacity ("RFC"). *See* Social Security Ruling ("SSR") 86-8, 1986 SSR LEXIS 15, at *18. At phase two, the ALJ must determine the physical and mental demands of the claimant's past relevant

---

[1]  20 C.F.R. pt. 404, subpt. P, app. 1.

work. 20 C.F.R. § 404.1520(e). At phase three, the ALJ will decide whether the claimant

has the ability to meet the job demands found in phase two, in light of "the mental and/or

physical limitations found in phase one." *Winfrey*, 92 F.3d at 1023 (citing *Henrie v. U. S.

Dep't of Health & Human Servs.*, 13 F.3d 359, 361 (10th Cir. 1993) and SSR 82-62, 1982

SSR LEXIS 27).

If the ALJ determines the claimant cannot engage in past relevant work, she will

proceed to step five of the evaluation process. At step five the burden of proof shifts to

the Commissioner to show the claimant is able to perform other work in the national

economy, considering his residual functional capacity, age, education, and work

experience. *Grogan*, 399 F.3d at 1257.

### III.  The ALJ's Decision

At step one, ALJ Farris determined Mr. Encinas met the insured status

requirement through September 30, 2012, but that he had engaged in substantial gainful

activity since August 11, 2010 because he had been working as a bell man and valet.

(AR at 22–23). Pursuant to Mr. Encinas's request, ALJ Farris addressed Mr. Encinas's

disability claim only for the closed period between March 1, 2008 and May 11, 2011. (AR

at 23) (citing AR at 264).

At step two, the ALJ found that Mr. Encinas was severely impaired with

congestive heart failure, hypertension, and diabetes mellitus. (AR at 23). At step three,

the ALJ determined that none of Mr. Encinas's impairments, solely or in combination,

equal one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526. (AR

at 23).

The ALJ proceeded to step four and made RFC findings that Mr. Encinias could

perform a restricted range of sedentary work. (AR at 24). She then adopted the testimony of the vocational expert, Ms. Beard, who stated that Mr. Encinias is capable of performing his past relevant work as a bonding agent, and concluded that Mr. Encinias was not disabled during the closed period. (AR at 30–31).

    A.    *Mr. Encinias's Testimony*

In making the RFC determination, the ALJ first considered Mr. Encinias's testimony regarding his symptoms. Mr. Encinias testified that he had experienced heart problems, diabetes and hypertension, but that his diabetes was mostly under control.[2] (AR at 24). He also testified that he had problems with shortness of breath, swollen legs, low energy, and bending over to put on his shoes and socks. (AR at 24) (citing AR at 42, 43, 44, 47). Mr. Encinias further stated that he lives with his sister, is able to cook, do chores around the house, and go grocery shopping. (AR at 24) (citing AR at 43–45). He said that he could only sit for up to 30 minutes at a time, stand between 30 and 45 minutes at a time, drive between 30 and 45 minutes, and walk up to 50 yards at a time. (AR at 24, 25) (citing AR at 49). Mr. Encinias testified that he had to elevate his legs when he lies down. (AR at 24) (citing AR at 43). Mr. Encinias also stated that he had not always been compliant with his prescribed treatment because of financial hardship. (AR at 24)

The ALJ then discussed Mr. Encinias's testimony about his new job as a bell man and valet. (AR at 24–25). Mr. Encinias stated he could not work prior to August 2010 because of his heart condition, and explained he could do his new job because his

---

2  Although not discussed by the ALJ, Mr. Encinias also testified about residual problems he has as a result of a stroke that he suffered in 2003. (AR at 49–50). Specifically, Mr. Encinias stated that he could not do several of his past jobs because of difficulty with his equilibrium. (AR at 49–50).

supervisor made numerous accommodations for him. (AR at 24–25) (citing AR at 46–47). Mr. Encinias testified that to alleviate his swollen legs and leg pain, his supervisor allowed him to elevate his feet during regular work breaks, the lunch period, and three or four additional times during each shift. (AR at 24) (citing AR at 46–47).

B.   _Objective Medical Evidence Considered by the ALJ_

The ALJ next discussed the objective medical evidence in the record, consisting of the treatment notes, reports, and/or assessments of: (i) treating physician Dara K. Lee, M.D., (ii) examining physician Charles H. Karaian, M.D., (iii) consulting examining physician Augustine Chavez, M.D., (iv) other health care professionals from the Presbyterian Heart Group, and (v) state agency consulting physicians. (AR at 25–30).

Dr. Lee was Mr. Encinias's cardiologist during the closed period. Dr. Lee first saw Mr. Encinias on August 1, 2008, after Mr. Encinias had not been feeling well for about two weeks and presented to the emergency room twice with congestive heart failure. (AR at 25) (citing AR at 180–83). Mr. Encinias told Dr. Lee that he had started taking his prescribed medications since going to the emergency room and he felt his condition was improving. (AR at 25) (citing AR at 181). Dr. Lee noted that a chest x-ray showed mild congestive heart failure, bilateral scar/atelectasis, and dilated cardiomyopathy. (AR at 25) (citing AR at 182). Dr. Lee opined the likely cause of these conditions was untreated, longstanding, and severe hypertension. (AR at 25) (citing AR at 182). A transthoracic echocardiogram taken that day further revealed an abnormal echo, left ventricular systolic function severely globally reduced, no significant valvular pathology, severe pulmonary hypertension, and markedly abnormal diastolic function. (AR at 24) (citing AR at 190–91).

On September 8, 2008, Dr. Lee examined Mr. Encinias and wrote that Mr. Encinias had uncontrolled hypertension and had not been taking his prescribed medications for at least a week.[3] (AR at 24) (citing AR at 177–79). A cardiac catheterization diagnostic from September 22, 2008 showed that Mr. Encinias was suffering from moderate coronary heart disease. (AR at 24) (citing AR at 192–93). Dr. Lee evaluated Mr. Encinias again on October 22, 2008 and assessed that he has doing well after his catheterization and taking his medication, and had no shortness of breath. (AR at 25) (citing AR at 187–89). Dr. Lee wrote that Mr. Encinias suffered from dilated cardiomyopathy, compensated congestive heart failure, and hypertension that was becoming better controlled, and that he possibly had diabetes. (AR at 25) (citing AR at 187–89).

Dr. Karaian treated Mr. Encinias on April 16, 2009 for dilated cardiomyopathy. (AR at 26) (citing AR at 174–76). Dr. Karaian wrote that Mr. Encinias had not been taking his prescribed medications for between four and seven months, and that Mr. Encinias reported no chest discomfort and no unusual shortness of breath. (AR at 26) (citing AR at 175). Dr. Karaian assessed Mr. Encinias with dilated cardiomyopathy, hypertension, and diabetes. (AR at 26) (citing AR at 175).

Dr. Chavez performed a consultative examination on Mr. Encinias on November 28, 2009. (AR at 26) (citing AR at 199–202). Mr. Encinias reported to Dr. Chavez that he suffered from hypertension and diabetes, which was affecting his vision and causing him to become fatigued, and that he had very poor control over his illnesses because he could not afford treatment. (AR at 26) (citing AR at 199). Mr. Encinias also told Dr.

---

3  In her decision, the ALJ misstated the date of this particular visit as November 17, 2008. (AR at 25). While Mr. Encinias did see Dr. Lee on that date, (AR at 184–86), the records cited by the ALJ are from a visit that took place on September 9, 2008.

8

Chavez that he experienced shortness of breath with exertion, such as walking 50 yards, but denied associated chest pain, nausea, or vomiting. (AR at 26) (citing AR at 199). Dr. Chavez assessed that Mr. Encinias was able to dress and feed himself, stand for 45 minutes at a time, sit for long periods of time, lift between 20 and 30 pounds, drive a car for 30 minutes, and perform normal household chores in short intervals, but could not climb stairs or mow the grass. (AR at 26) (citing AR at 200). Mr. Encinias did not report any new hospitalizations to Dr. Chavez. (AR at 26) (citing AR at 200).

Dr. Chavez noted that Mr. Encinias was markedly hypertensive, but had no other identifiable end-organ damage and no significant functional limitations with regards to his reported bluffing in his vision. (AR at 26) (citing AR at 201). Dr. Chavez found that Mr. Encinias was at risk for heart disease due to his severely uncontrolled hypertension. (AR at 27) (citing AR at 200). He observed that Mr. Encinias had: (i) shortness of breath with a normal lung examination and no objective evidence to indicate significant functional limitation with regards to shortness of breath; (ii) stroke with no motor deficits, no appreciable sensory deficits, mild imbalance representing a slight to moderate degree of functional limitation with regards to balance-requiring activities, but no other significant functional limitations; and (iii) migraine headaches with no objective evidence for significant functional limits with regards to that allegation. (AR at 27) (citing AR at 201).

On December 4, 2009, Mr. Encinias was admitted to Presbyterian Heart Group for two days because he was suffering from fatigue, nightly paroxysmal nocturnal dyspnea ("PND"), and dyspnea on exertion, and was subsequently diagnosed with edema of the feet or ankles which subsided after treatment. (AR at 27) (citing AR at 207–09). Mr. Encinias admitted to not taking his medications, and was assessed as "Heart

9

Association functional class III." (AR at 27) (citing AR at 208). The ALJ concluded: "[Mr. Encinias] was obviously in decompensated heart failure and it was because he had not been taking his medications." (AR at 27).

On December 14, 2009, non-examining, state agency consulting physicians evaluated Mr. Encinias's medical records. (AR at 29) (citing AR at 215–22). Those physicians deemed Mr. Encinias capable of performing a limited range of light work, if he (i) never climbed ladders, ropes or scaffolds, (ii) only occasionally climbed ramps or stairs, balanced, stooped, kneeled, crouched or crawled; and (iii) avoided certain environmental hazards. (AR at 29) (citing AR at 215–22).

Mr. Encinias was next evaluated by Dr. Lee on December 30, 2009 for his uncontrolled hypertension, nonischemic cardiomyopathy, and heart failure. (AR at 27) (citing AR at 230–32). Mr. Encinias reported that he was taking his medications faithfully, and that he no longer had orthopnea, PND, or peripheral edema, his breathing was improved unless he over-exerted himself, he experienced atypical pain on the right side of his chest and right upper back, and he was able to walk 1.5 miles every day. (AR at 27) (citing AR at 231).

On April 2, 2010, Mr. Encinias was again admitted to Presbyterian Heart Group for a couple of days, this time due to chest pain. He underwent another cardiac catheterization which showed diffused coronary artery disease. (AR at 28) (citing AR at 245–49). Dr. Lee treated Mr. Encinias the following week, and reported that Mr. Encinias was no longer experiencing chest pain, shortness of breath, orthopnea, or PND, had sought help from an endocrinologist for his diabetes, and was trying to get regular exercise through walking. (AR at 27–28) (citing AR at 227–29). During that visit Dr. Lee

10

assessed Mr. Encinias with coronary artery disease and ischemic cardiomyopathy. (AR at 28) (citing AR at 228).

Dr. Lee performed an RFC assessment of Mr. Encinias's ability to do work-related, physical and non-physical activities on June 13, 2011. (AR at 28) (citing AR at 265–66). Dr. Lee assessed Mr. Encinias with being able to only occasionally or frequently lift and/or carry less than ten pounds, which Dr. Lee noted was supported by Mr. Encinias's chronic heart failure. (AR at 28) (citing AR at 265). Dr. Lee found that Mr. Encinias could stand and/or walk (with normal breaks) for a total of at least two hours in an eight-hour workday, but must periodically alternate between sitting and standing to relieve pain or discomfort. (AR at 28) (citing AR at 265). Dr. Lee determined that Mr. Encinias was limited in his ability to push and/or pull in the lower extremities, which Dr. Lee commented was caused by Mr. Encinias's chronic heart failure and shortness of breath. (AR at 28) (citing AR at 265,).

Dr. Lee found that Mr. Encinias could perform repetitive actions that include handling and fingering, that he could occasionally kneel, stoop, crouch, or crawl, and that Mr. Encinias's non-physical work activities were affected by Mr. Encinias's symptoms of pain, fatigue, sleep disturbances, visual difficulties, neurocognitive problems, fainting, dizziness, and mental problems. (AR at 28) (citing AR at 265, 266). Dr. Lee opined that Mr. Encinias had to rest or lie down at regular intervals due to his pain and fatigue, had difficulty maintaining physical effort for long periods without needing to decrease activity or pace or to rest intermittently, and moderate limitations with completing a normal workday and workweek due to pain and fatigue. (AR at 28) (citing AR at 266). Dr. Lee cited Mr. Encinias's chronic heart failure and shortness of breath for the reason why Mr.

11

Encinias might not be able to perform the job of bounty hunter any more, and would require frequent doctor notes and stringent adherence to diets and prescribed medicines. (AR at 28) (citing AR at 266).

C.   _Treatment and Daily Activities_

ALJ Farris proceeded to discuss other factors that affected her analysis, such as Mr. Encinias's medical treatment and daily activities. (AR at 29–30). The ALJ considered that Mr. Encinias was currently working, and stated that it indicates that his daily activities were greater than he reported. (AR at 29). Mr. Encinias made inconsistent statements regarding his abilities to groom himself, prepare meals, clean and do laundry, go shopping, and drive a car. (AR at 29). She also noted that even though Mr. Encinias and his supervisor claim he has to sit down and elevate his legs throughout the workday, no medical evidence supports his need to do so. (AR at 29). Therefore, she concluded, Mr. Encinias's credibility was eroded. (AR at 29). There were also multiple instances during the closed period where Mr. Encinias had been treatment non-compliant or had smoked cigarettes regularly, despite receiving advice about the risk factors of doing either. (AR at 25, 26, 29) (citing AR at 174–76).

D.   _RFC Determination_

ALJ Farris ultimately found that Mr. Encinias was able to perform a limited range of sedentary work as long it was restricted to only occasional climbing, balancing, stooping, kneeling, crouching, and crawling.[4]  (AR at 24). The ALJ considered Mr.

---

4  Pursuant to the Regulations, "sedentary work" is defined as work that:
    [i]nvolves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are

Encinias's testimony, treatment, and daily activities and the objective medical evidence in the record in making the RFC finding.

ALJ Farris stated that she found Mr. Encinias's statements concerning the intensity, persistence, and limiting effects of his symptoms to be not credible to the extent they were inconsistent with her RFC determination. (AR at 25). There were inconsistencies between Mr. Encinias's testimony and statements throughout the record when compared to the objective medical evidence, and the ALJ concluded that his subjective allegations of pain alone could not support a finding of disability. (AR at 30).

The medical evidence showed that if Mr. Encinias took his medication regularly, his symptoms would go away. (AR at 29) (AR at 234–35). ALJ Farris acknowledged that the reason Mr. Encinias claimed to be unable to follow the prescribed course of treatment was because he did not have insurance and could not afford medicine and regular physician appointments. (AR at 30). However, the ALJ commented that there are free and low-cost health care programs for which Mr. Encinias could qualify, and that it was telling that Mr. Encinias purchased cigarettes. (AR at 30).

The ALJ also stated that no medical evidence indicated that Mr. Encinias had any significant functional limitations inconsistent with her RFC finding. With regards to Dr. Lee's medical opinions, ALJ Farris explained that:

> I have considered the opinions of Dr. Lee as reported above and have given some weight to her opinions. I concur, and have given significant weight to her opinion that [Mr. Encinias] could perform repetitive actions that included handling (gross manipulation) and fingering (fine manipulation). Further, he could occasionally kneel, stoop, crouch or crawl ([AR at 265]). However, I find no basis for the opinions about the need for frequent breaks or rest periods.

(AR at 29). The only other medical opinions the ALJ weighed or otherwise analyzed at

met.
20 C.F.R. § 505.1567(a).

step four were the RFC assessments by the state agency consulting physicians, which she determined to be consistent with her RFC determination. (AR at 29). The ALJ concluded that the medical evidence did not support Mr. Encinias's assertions regarding his subjective symptoms and functional limitations, because the record did not contain any medical opinion that he is disabled. (AR at 30).

### E.   *Past Relevant Work Analysis*

ALJ Farris proceeded to determine whether Mr. Encinias could perform his past relevant work. (AR at 30). The vocational expert testified that an individual with Mr. Encinias's age, education, work experience, and RFC could perform the job of bonding agent, which she found partially captured his past work as a bounty hunter.[5] (AR at 30) (citing AR at 54–56). The job of bonding agent is considered skilled and sedentary work. (AR at 30) (citing AR at 54). Therefore, the ALJ concluded, Mr. Encinias was able to perform the mental and physical demands of his past relevant work and was not disabled during the closed period. (AR at 30–31).

## IV. Analysis

Mr. Encinias alleges ALJ Farris committed several reversible errors at step four of the sequential analysis. First, Mr. Encinias contends that ALJ Farris violated the treating physician rule because she did not conduct the correct legal analysis of Dr. Lee's medical opinions. (Doc. 19 at 7–11). He argues the ALJ did not afford Dr. Lee's opinion the proper weight or provide sufficiently specific reasons for her decision to discount Dr. Lee's opinions. (Doc. 19 at 10–11). Second, he complains that ALJ Farris failed to

---

5  The vocational expert testified that the Dictionary of Occupational Titles does not include a listing for a bounty hunter of human beings. (AR at 53–54). The ALJ proceeded to question the vocational expert about the requirements of a bonding agent because Mr. Encinias testified that part of his job involved writing bonds. (AR at 54–55).

properly assess the physical and mental demands required by Ms. Encinias's work as a bounty hunter. (Doc. 19 at 12–17).

The Commissioner does not dispute Dr. Lee's status as Mr. Encinias's treating physician, but maintains the ALJ did not commit legal error because she provided specific, legitimate reasons for discounting portions of Dr. Lee's opinion. (Doc. 22 at 4). The Commissioner also responds that ALJ Farris correctly re-classified Mr. Encinias's bounty hunter job as a bonding agent job, and that her analysis as to Mr. Encinias's ability to do past relevant work was proper. (Doc. 22 at 10).

A.   *Treating Physician Rule*

The Social Security regulations require the ALJ to evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.157(d). "The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all." *Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (per curiam) (citing 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(d)(1), (2); SSR 96-6p, 1996 SSR LEXIS 3, at *5–6).

The ALJ should accord opinions of treating physicians "controlling weight" when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the "treating physician rule." 20 C.F.R. § 404.1527(c)(2); *Langley*, 373 F.3d at 1119. A treating physician's opinion is accorded "controlling weight" because the treating physician has a "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual

15

examinations, such as consultative examinations." *Doyal*, 331 F.3d at 762 (citing 20

C.F.R. § 416.927(d)(2)).

If a treating physician's opinion is not supported by medical evidence or

consistent with the record, it may still receive deference. SSR 96-2p, 1996 SSR LEXIS 9,

at *9. The level of deference the treating physician's opinion receives must be

determined using the following six factors:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins v. Barnhart*, 350 F.3d 1297, 1300–01 (10th Cir. 2003); *see* 20 C.F.R. §

404.1527(c)–(d). The ALJ must give good reasons—reasons that are "sufficiently

specific to [be] clear to any subsequent reviewers"—for the weight that he ultimately

assigns to the opinions. *Langley*, 373 F.3d at 1119 (citations ommitted).

In sum, the ALJ must conduct a sequential, two-step inquiry if she wishes to

accord a treating physician's opinion less than "controlling weight." First, the ALJ must

find the opinion to be unsupported by medical evidence or inconsistent with substantial

evidence in the record. Next, she must determine what deference she will accord the

opinion after considering the factors listed above, and state sufficiently specific reasons

for that determination. Each step in the inquiry is "analytically distinct." *See Krauser v.

Astrue*, 638 F.3d 1324, 1330–31 (10th Cir. 2011). Her determination, like all of her

findings, must be supported by substantial evidence.

B.    The ALJ Did Not Follow the Treating Physician Rule

In her decision, the ALJ stated that she gave "some weight" to Dr. Lee's opinions, but that she accorded "significant weight" to Dr. Lee's opinions regarding handling and fingering, kneeling, stooping, crouching and crawling. (AR at 29). With regards to Dr. Lee's opinions that Mr. Encinias requires frequent breaks and rest periods to manage his symptoms, the ALJ only said that she found "no basis" for those opinions. (AR at 29).

The ALJ's RFC determination differs from Dr. Lee's medical opinions in several important respects. Particularly, Dr. Lee's opinions are in conflict with the RFC finding with regards to Mr. Encinias's: (i) need to alternate between sitting and standing; (ii) need to rest or lie down regularly due to fatigue; (iii) marked limitation in maintaining physical effort for long periods of time without the need to decrease activity or the pace of the activity or rest intermittently; and (iv) moderate limitation in his ability to complete a normal workday and workweek without interruptions from pain or fatigue. (AR at 265–66).

Mr. Encinias contends that ALJ Farris's reasoning is not sufficiently specific enough to satisfy the treating physician rule. (Doc. 19 at 10–11). The Commissioner responds that the ALJ properly considered Dr. Lee's medical opinions, and gave sufficient and well-founded reasons for discounting some of the opinions, which are supported by substantial evidence. (Doc. 22 at 4). The Court finds that ALJ Farris's analysis was deficient. ALJ Farris failed to explain why Dr. Lee's opinion was not afforded "controlling weight"—she did not state whether she found the opinion to be unsupported by medical evidence or inconsistent with the substantial evidence in the record. (Doc. 23 at 2) (citing AR at 29). The ALJ only stated that there was no basis for

Dr. Lee's opinions, with no reference any part of the record. Mr. Encinias is correct that such a statement does not constitute "a reasoned finding explaining the weight assigned" to Dr. Lee's opinion. (Doc. 19 at 11).

Mr. Encinias also argues that the ALJ's finding is not supported by substantial evidence, because there is medical evidence that provides a basis for Dr. Lee's disputed opinions. For example, during the closed period Mr. Encinias was designated as "Heart Association functional class III," which is assigned to "[p]atients with cardiac disease resulting in marked limitation of physical activity" who are "comfortable at rest" and for whom "[l]ess than ordinary activity causes fatigue, palpitation, dyspnea, or angina pain."[6] (Doc. 19 at 9, n. 3 & 6) (citing AR at 234). Further, both parties have pointed out that both Mr. Encinias and his supervisor indicated Mr. Encinias had to take frequent breaks and rest periods to alleviate his symptoms. (AR at 22, 29). This evidence, taken with Mr. Encinias's classification as "Heart Association functional class III," shows that there was some basis for Dr. Lee's opinions. Therefore, the ALJ should have discussed this significantly probative evidence, in addition to the evidence supporting her decision. *See Haga v. Astrue*, 482 F.3d 1205, 1207 (10th Cir. 2007).

Further, ALJ Farris failed to make a distinct, two-step analysis when she weighed Dr. Lee's opinions. *See Krauser*, 638 F.3d at 1330. The Tenth Circuit has explained that it is improper to collapse the two-step inquiry into a single point because "[e]xplicit findings properly tied to each step of the prescribed analysis facilitate meaningful judicial review." *See Chrismon v. Astrue*, 2013 U.S. App. LEXIS 17485, *21 (10th Cir. Aug. 21, 2013) (unpublished). The ALJ's analysis of Dr. Lee's opinions does not reflect

---

[6] *See* AM. HEART ASS'N, *Classes of Heart Failure*, Aug. 5, 2011, *available at*
http://www.heart.org/HEARTORG/Conditions/HeartFailure/AboutHeartFailure/Classes-of-Heart-Failure_U
CM_306328_Article.jsp#.

consideration of any of the six "deference" factors, nor does it clearly explain the weight that was ultimately accorded to some of those opinions.[7]

The Commissioner argues that the ALJ was not required to explicitly state that she considered the "deference factors" in weighing Dr. Lee's opinions. (Doc. 22 at 4) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). While the Commissioner is correct that the ALJ need not explicitly consider each of the "deference factors," in this case the ALJ's analysis does not reveal whether she considered any of them or that she engaged in step two of the analysis at all. "In applying the 'deference factors,' the ALJ's findings must be sufficiently specific to make clear to any subsequent reviewers the weight [she] gave to the treating source's medical opinion and the reason for that weight." *Krauser*, 638 F.3d at 1331 (quotations omitted). Faced with only the silence of the ALJ's decision, the Court is left to guess not only the ALJ's reasoning, but also the weight she actually afforded those opinions now in dispute. Therefore, the Court finds that the ALJ committed reversible error by failing to engage in the proper two-step analysis in weighing Dr. Lee's opinion.

The Commissioner's remaining arguments are unpersuasive. The Commissioner contends that the ALJ properly discounted portions of Dr. Lee's opinions because they amount to an administrative assessment reserved for the ALJ. (Doc. 22 at 4–5). Mr. Encinias accurately challenges the Commissioner's arguments, pointing out that Dr. Lee's medical source statement as to Mr. Encinias's functional limitations does not make the opinion an impermissible RFC determination. (Doc. 23 at 2). He points the Court to the Tenth Circuit's acknowledgment that a treating physician's role is to make medical

---

[7]  The plain language of the ALJ's analysis does not make clear whether she afforded some weight, no weight, or some other measure of deference to Dr. Lee's opinions regarding Mr. Encinias's need for frequent breaks and rest periods.

findings as to work-related limitations, which must always impact the ALJ's determination of RFC, but that does not make the findings an impermissible opinion on RFC itself. *See Krauser*, 638 F.3d at 1332. Mr. Encinias also argues that Dr. Lee provided a "true medical opinion," defined by the Tenth Circuit in *Cowan v. Astrue*, 552 F.3d 1182, 1189 (10th Cir. 2008), as one that contains a doctor's "judgment about the nature and severity" of Mr. Encinias's limitations, or "any information about what activities he could still perform." *See* 20 C.F.R. § 404.1527(a)(2).

The Commissioner also argues that the check-box form that Dr. Lee completed in making his RFC assessment contains no explanations or reference to diagnostic testing results to support her opinions, which means the opinions are not entitled to "controlling weight" because they do not constitute substantial evidence. (Doc. 22 at 5) (citing *Frey v. Bowen*, 816 F.2d 508, 515–16 (10th Cir. 1987)). Mr. Encinias replies that the Commissioner's argument is misleading, because the case relied upon by the Commissioner has been restricted to discount only those opinions formed by non-treating physicians who have limited contact with a claimant. *See Andersen v. Astrue*, 319 F.App'x 712, 723 (10th Cir. 2009) (unpublished). Therefore, the Commissioner's argument holds no weight in the context of a treating physician's opinions.

The Commissioner insists that ALJ Farris discounted part of Dr. Lee's opinion because she found that Dr. Lee's opinion must be based solely on Mr. Encinias's supervisor's claim that he takes frequent breaks during the workday to elevate his legs. (Doc. 22 at 6). The Commissioner also notes that Dr. Lee never mentioned in any of her treatment notes that Mr. Encinias needed to elevate his legs, and points out that Mr.

20

Encinias did not tell Dr. Chavez that he needed frequent rest breaks to elevate his legs. (Doc. 22 at 6–7) (citing AR at 201). Last, the Commissioner points the Court to Dr. Chavez's observations that Mr. Encinias did not have clubbing, cyanosis, or edema in his legs or feet during his examination. (Doc. 22 at 6–7) (citing AR at 201). However, the Court cannot find language in the decision that ALJ Farris discounted Dr. Lee's opinions for any of those reasons.

The Commissioner also argues that the ALJ determined Mr. Encinias's daily activities exceeded what they should have been, if his complaints of disabling symptoms and limitations are believed. (Doc. 22 at 6). She also points out that the ALJ found Mr. Encinias's current employment to be indicative that his daily activities were greater than what he reported. (Doc. 22 at 6) (citing AR at 29). The Commissioner is correct that, in a separate portion of her decision, the ALJ determined the Mr. Encinias was not credible as to the severity of his symptoms because of alleged inconsistent statements regarding his daily activities. (AR at 29). However, the Commissioner's attempt to bolster the ALJ's analysis of Dr. Lee's opinions by conflating it with the ALJ's discussion of Mr. Encinias's credibility will not work. (Doc. 23 at 4). The Court has reviewed the entire decision, and the ALJ never made any direct correlation between the veracity of Dr. Lee's opinions and Mr. Encinias's credibility. Therefore, the Court will not consider these arguments because it may only evaluate the ALJ's decision for the reasons stated therein. *See Robinson*, 366 F.3d at 1084.

The Commissioner further argues that the ALJ considered Mr. Encinias's non-compliance with his treatment plan in discounting Dr. Lee's opinions. (Doc. 22 at 7) (citing AR at 29). The Commissioner points out that Mr. Encinias told Dr. Lee that he felt

21

better when he properly took his medications, and could regularly walk 1.5 miles. (Doc. 22 at 7) (citing AR at 29, 231–32, 234–35). Therefore, the Commissioner reasons, since Mr. Encinias's symptoms could be controlled by medication then the ALJ properly discounted Dr. Lee's opinions that Mr. Encinias needed frequent breaks or rest periods. (Doc. 22 at 7).

Again, the ALJ never gave those reasons for discounting Dr. Lee's opinions in her decision. The Commissioner's arguments cannot save the ALJ's determination because the Court may not stray from the four corners of the decision. The Court's evaluation is based solely on the reasons stated in the decision, and it is impermissible for the Court to engage in *post hoc* rationalization. *Robinson*, 366 F.3d at 1084–85.

ALJ Farris did not evaluate Dr. Lee's opinion under the proper legal standards. Therefore, the ALJ did not adequately consider her opinion when she made the RFC determination. Because the ALJ failed to follow the correct legal standards in considering the opinion of Mr. Encinias's treating physician, the Court remands this case for further proceedings.

## V.  Conclusion

For the reasons discussed above, the Court finds that, considering all of the evidence in the record, the ALJ did not apply the correct legal standards in considering Dr. Lee's opinion, and the reason she gave for discounting the opinion is not supported by substantial evidence. The Court does not decide any other issue raised by Mr. Encinias on appeal, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Mr. Encinias's *Motion to Reverse or Remand*

*Administrative Agency Decision* (Doc. 18) be **GRANTED** and that this case be

**REMANDED** to the Commissioner for further proceedings consistent with this

Memorandum Opinion and Order.

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE